# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

JANELLE ZOCH,

          Claimant,

vs.

KILO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

Case No. 20-cv-4058-CJW

**REPORT AND RECOMMENDATION**

_____

Janelle Zoch ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the following reasons, I respectfully recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 15) and only summarize the pertinent facts here. Claimant was born August 23, 1966. (AR[1] at 27.) Claimant has at least a high school education and is able to communicate in English. (*Id.* at 20.) She allegedly became disabled due to fibromyalgia, degenerative disc disease of the lumbosacral spine, polyneuropathy, status post bilateral carpal tunnel syndrome release, and bipolar disorder. (*Id.* at 12.) Claimant's onset of disability date is August 1, 2018. (*Id.* at 10.) On April 30, 2018, Claimant filed her application. (*Id.*) Her claim was denied originally and on reconsideration. (*Id.* at 147, 156.) A teleconference hearing

---

[1] "AR" cites refer to pages in the Administrative Record.

was held on February 20, 2020, with Claimant and her attorney Willis Hamilton in Sioux City, Iowa and ALJ Jan E. Dutton in Omaha, Nebraska. (*Id.* at 10.) Vocational expert ("VE") Vanessa May also appeared. (*Id.*) Claimant and the VE testified. (*Id.* at 82-115.) The ALJ issued an unfavorable decision on March 26, 2020. (*Id.* at 7-26.)

Claimant requested review and the Appeals Council denied review on October 19, 2020. (*Id.* at 1-4.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On December 18, 2020, Claimant timely filed her complaint in this Court. (Doc. 3.) On November 3, 2021, all briefing was completed, and the Honorable C.J. Williams referred the case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

2

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment

3

meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

A.    *The ALJ'S Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity from her application date of April 30, 2018. (AR at 12.)

Claimant's earnings during the fourth quarter of 2018 fell below the level of substantial gainful activity. (*Id.*)

At step two, the ALJ found that Claimant suffered from the following severe impairments: fibromyalgia, degenerative disc disease of the lumbosacral spine, polyneuropathy, status post bilateral carpal tunnel syndrome release, and bipolar disorder. (*Id.*) The ALJ considered the effects of Claimant's sleep apnea, history of bariatric gastric bypass surgery with corresponding vitamin B12 deficiency, and migraine headaches when assessing other steps of the sequential evaluation process. (*Id.* at 13.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.* at 13.) She noted Claimant does not have nerve root compression, spinal arachnoiditis, or pseudoclaudication and, thus, found that the paragraph C criteria were not met "because medical imaging does not establish lumbar spinal stenosis or that the condition resulted in pseudoclaudication and compromise of a nerve root, and there is no evidence of chronic weakness and an inability to ambulate effectively." (*Id.*) The ALJ also noted that fibromyalgia is not a listed impairment and that no medical expert "opined that the [C]laimant's fibromyalgia equals a listing, as is required for a finding of equivalence with a listing." (*Id.*) The ALJ evaluated Claimant's mental impairments under listing 12.04 (depressive, bipolar and related disorders) and considered whether the paragraph B criteria were satisfied. (*Id.*) She found that they did not meet or medically equal any of the criteria because although "[C]laimant alleged her fibromyalgia causes brain fog that can interfere with her ability to follow written and spoken instructions" evidence also showed "[C]laimant follows written and spoken instructions 'fine.'" (*Id.*) Also, her "fund of knowledge appeared unimpaired, and her memory, both short and long-term, appeared to be intact." (*Id.*) Thus, the ALJ concluded "[C]laimant has mild limitation

in understanding, remembering, or applying information." (*Id.*) The ALJ also found that Claimant "has no more than mild limitation in interacting with others" because Claimant regularly interacts with her family, visits various medical professionals, and visits with a friend regularly. (*Id.* at 14.) She also appeared to "interact appropriately with others." (*Id.*) Although Claimant alleged brain fog prevented her from concentrating and that her chronic pain interfered with her ability to focus, the ALJ noted that Claimant showed "no major issues with attention and calculation." (*Id.*) Still, because there was evidence "[C]laimant's pain and depression would interfere frequently with her attention and concentration needed to perform even simple work tasks," the ALJ found [C]laimant has a moderate limitation in concentrating, persisting, or maintaining pace. (*Id.*) Last, the ALJ found that Claimant has a mild limitation in adapting or managing herself because although her "anxiety symptoms could be exacerbated if she worked in a highly populated or high-stress environment" she was also able to "exercise proper judgment and remain flexible in the workplace" and "capable of performing low stress jobs." (*Id.*) Thus, the ALJ concluded that the record did not show Claimant exhibited at least two "marked" limitations or one "extreme" limitation and thus, the "paragraph B" criteria were not satisfied. (*Id.*) The ALJ found the evidence also failed to establish the presence of the "paragraph C" criteria. (*Id.*)

> At step four, the ALJ found that Claimant had the following RFC:
>
> to perform light work as defined in 20 CFR 416.967(b) with postural, manipulative and mental restrictions and limitations. The [C]laimant should not climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. She can perform handling, fingering, and feeling with her bilateral upper extremities frequently, but not constantly. She must avoid vibration and hazards. She is able to perform simple, routine tasks.

(AR at 15.) The ALJ considered Claimant's "fibromyalgia, neuropathy, bipolar/schizophrenia, anemia, vitamin deficiency, and sleep apnea." (*Id.*) The ALJ

also considered the third-party function report of Donna Baxter. (*Id.*) She considered Claimant's testimony at the hearing. (*Id.* at 16.) Although the ALJ found that Claimant's impairments "could reasonably be expected to cause some but not all the alleged symptoms and severity. However, the [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 16.) She explained that the medical evidence did not support "the degree of debility alleged by the [C]laimant." (*Id.*) She also considered the medical opinions of Drs. David Crippen, M.D., and Tony Larson, Psy.D. (*Id.* at 17.) She found "[C]laimant is capable of performing past relevant work as a cashier. This work does not require the performance of work-related activities precluded by the [C]laimant's residual functional capacity." (*Id.* at 19.)

At step five, the ALJ found that "[i]n addition to past relevant work, there are other jobs that exist significant numbers in the national economy that the [C]laimant can perform." (*Id.*) Those other jobs include order caller, routing clerk, and information clerk. (*Id.* at 20.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 21.)

**B.** **The Substantial Evidence Standard**

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of

choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III.    DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to articulate sufficient reasons for how persuasive she found Dr. David Crippin's opinion; (B) failing to articulate good reasons for discounting Claimant's subjective complaints; (C) failing to fully and fairly develop the record concerning "some medical evidence;" (D) failing to properly evaluate the work activity questionnaire; (E) failing to articulate sufficient reasons for how persuasive he found Dr. Tony Larson's opinion; and (F) failing to articulate sufficient reasons for how persuasive she found Diane Mangold's opinion. (Doc. 16.)

### A.    *Whether the ALJ Properly Evaluated Dr. Crippin's Opinion*

Claimant argues the ALJ failed to articulate sufficient reasons for indicating why she found Dr. Crippin's opinions unpersuasive. (Doc. 16 at 7.) Specifically, she argues that the ALJ failed to address Dr. Crippin's opinion that Claimant's conditions limit her

to standing or walking for only fifteen minutes at a time for no more than two hours during an eight-hour workday. (*Id.* at 6.) Claimant asserts the error was harmful because it resulted in the ALJ finding Claimant capable of performing work at the light exertional level. (*Id.* at 7.) The Commissioner argues that the ALJ addressed the RFC worksheet Dr. Crippin completed and thus, Claimant's argument is without merit. (Doc. 17 at 8.)

### 1. Relevant Law

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Sections 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

#### a. Supportability

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

### b. Consistency

"The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

### 2. Analysis

Dr. Crippin completed a physical RFC worksheet. (AR at 1333-1337.) In her review of Dr. Crippin's opinion, the ALJ stated that she:

> carefully reviewed but deemed less persuasive the medical opinions of Dr. David Crippen, M.D. (Exhibit 23F). The undersigned deemed somewhat persuasive Dr. Crippen's opinion that the [C]laimant suffers from chronic pain and depression that would affect her ability to concentrate, and the undersigned has limited the claimant to performing simple, routine tasks. The undersigned also considered Dr. Crippen's opinion on manipulative limitations and limited the [C]laimant to frequent, but not constant, handling fingering, and feeling. However, the undersigned finds no evidentiary support for Dr. Crippen's other extreme limitations, such as rarely being able to lift 10 pounds never being able to lift 10 or more pounds. (Exhibit 23F). To the contrary, the [C]laimant said she could lift between 15-20 pounds. (Exhibit 6E). Additionally, the undersigned finds not support for finding the [C]laimant would require unscheduled breaks every hour and would likely miss four or more days of work each month.

(AR at 19.) Claimant is correct that the ALJ did not directly address the portion of Dr. Crippin's RFC describing Claimant's ability to walk. (Doc. 16 at 6.) Claimant is mistaken, however, that the ALJ was required to directly address every statement in Dr. Crippin's RFC. (*Id.* (citing *Bonnett v. Kijakazi*, 859 F. App'x 19 (8th Cir. 2021)).) ALJs are "not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually" but "will articulate how [they] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." 20 C.F.R. § 416.920c(b)(1). That "single analysis" is quoted above. *Id.* Here, Dr. Crippin's opinion regarding Claimant's

ability to walk was "provided on a 'check the box' form and the office notes upon which those opinions were presumably based largely comprised [Claimant]'s self-report of [her] symptoms and responses rather than objective clinical evidence or evaluative testing." *Andrew H. S. v. Kijakazi*, No. 20-CV-1553 (SRN/HB), 2022 WL 409954, at *10 (D. Minn. Jan. 24, 2022), *report and recommendation adopted*, No. 20-CV-1553 (SRN/HB), 2022 WL 409951 (D. Minn. Feb. 10, 2022). The form used here is an example of a "check the box" form unsupported by objective testing or reasoned explanation. *See Andrew H. S.*, 2022 WL 409954 at *10. Dr. Crippin did not even fill out the form; as he notes "[s]ee attached functional capacity filled out by BVRMC Occupational therapist." (AR at 1344.) Critically, Dr. Crippin mentions the findings he agrees with in that form but makes no mention of the extreme limitations noted relating to gait. (*Id.* at 1344.) Regarding Claimant's gait, Dr. Crippin's notes only state that Claimant has left leg weakness and bilateral feet neuropathy but no foot drop or focal deficits. (*Id.* at 1341-42.) Here, Claimant exaggerates the degree to which it is, if at all, Dr. Crippin's opinion that Claimant's conditions limit her to standing or walking for only fifteen minutes at a time for no more than two hours during an eight-hour workday. (Doc. 16 at 6.) As such, the facts here are much more like *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001), where the Eighth Circuit concluded that the ALJ did not err because the ALJ found that the limitations at issue were not mentioned in the treating doctor's records. *Id.* at 961. Still, I will evaluate whether the ALJ properly considered supportability and consistency separately.

### a. Supportability

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

Here, as the ALJ found, Dr. Crippin did not provide any medical evidence or supporting explanation to support his opinion regarding Claimant's ability to stand or walk for only two hours during an eight-hour shift and then in only fifteen-minute increments. (AR at 19, 1334-1335.) Claimant points to nothing in the record other than Dr. Crippin's unsubstantiated conclusions in an RFC questionnaire that supports Dr. Crippin's finding. A physician's opinion may be disregarded when it "consists of nothing more than vague, conclusory statements." *Koch v. Kijakazi*, 4 F.4th 656, 666 (8th Cir. 2021) (addressing the treating physician rule) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1026 (8th Cir. 2021) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)); *Despain*, 926 F.3d at 1028 (an ALJ may discredit a conclusory physician's report if it is unsupported by the medical record). Dr. Crippin's RFC consisted almost entirely of vague conclusory statements. Thus, the evidence on this issue supports finding Dr. Crippin's opinion unpersuasive.

### b.    Consistency

"The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

Dr. Crippin's opinion was also not consistent with the other sources. Specifically, the ALJ noted that it was not consistent with Claimant's self-evaluation. (AR at 19, 286-293.) Again, Claimant points to nothing in the record to indicate what, if anything, shows consistency in Dr. Crippin's opinion. It is not the Court's place to reweigh the evidence or to find evidence in the record to support Claimant's arguments. *See Vester*, 416 F.3d at 889 (courts do not reweigh evidence); *ASARCO, LLC v. Union Pac. R.R. Co.*, 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (internal quotation marks omitted). It was Claimant's burden to present evidence that the ALJ would have decided the case differently had she

considered the opinion, *see Byes*, 687 F.3d at 917, and Claimant has not satisfied this burden. Moreover, in *Bonnett*, "while the ALJ adequately evaluated the supportability of Dr. Thompson's opinion, she did not address whether his opinion was consistent with the other evidence of record, as required by the applicable regulation." 859 F. App'x at 20 (citing *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020)). That is not the case here. The ALJ found that the "more extreme limitations" in Dr. Crippin's RFC were not corroborated elsewhere in the record. As such, the evidence on this issue supports finding Dr. Crippin's opinion unpersuasive.

### c. *Harmless Error*

Accordingly, because I find the ALJ did not err in finding Dr. Crippin's opinion unpersuasive, I also find that Claimant was not harmed. (Doc. 16 at 7.) But even if the ALJ had failed to address supportability or consistency I would still find the error harmless. "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus*, 960 F.3d at 1069 (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Claimant asserts that but for the error she would have been "limited to a sedentary exertional level, given her mental limitations, she would have been found disabled." (Doc. 16 at 6.) Claimant cites to case law and other secondary sources but, crucially, cites to nothing in the record to support that assertion. As the ALJ found, there was "no evidentiary support for Dr. Crippen's other extreme limitations." (AR at 19.) Thus, I reject this argument.

### 3. *Conclusion*

For all the reasons stated above, I conclude that the ALJ did not err in finding Dr. Crippin's opinion unpersuasive. Thus, I recommend the District Court affirm this part of the ALJ's decision.

**B.      Whether the ALJ's Credibility Determination was Supported by Substantial Evidence**

Claimant argues that the ALJ did not provide good reasons for finding her report of her limitations uncredible.  (Doc. 16 at 8.)  She asserts that the ALJ's finding that she pursued only conservative treatment is minimally supported.  (*Id.* at 10.)  She also asserts that the ALJ's findings concerning the medical evidence and Claimant's need for surgery were so erroneous that they require remand.  (*Id.*)  She also argues that it was error for the ALJ to find that her limited activities showed her ability to perform fulltime competitive light exertional work.  (*Id.* at 11.)  The Commissioner argues that the ALJ properly evaluated Claimant's subjective complaints.  (Doc. 17 at 12.)

*1.      Relevant Law*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity."  20 C.F.R. § 404.1529(d)(4).  This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms.  *Id.* § 404.1529(b),(c).  When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions.  *Polaski v. Heckler*,

739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[2] An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

> Although "an ALJ may not discount a claimant's allegations of disabling [subjective impairments] solely because the objective medical evidence does not fully support them," the ALJ may find that these allegations are not credible "if there are inconsistencies in the evidence as a whole." [*Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)] (internal quotations and citations omitted). We will defer to the ALJ's credibility finding if the ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (quotation and citation omitted).

*Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

### 2. Analysis

The record does not support Claimant's argument that the ALJ failed to provide good reasons for discounting her subjective complaints. The ALJ articulated her reasons

---

[2] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v),(vi).

for discounting Claimant's allegations at length considering the hearing testimony, Claimant's medical records, doctors' medical opinions, and lay opinions. (AR at 13-19.) Nevertheless, I will address each of Claimant's arguments regarding whether the ALJ erred in turn.

### a. The MRI Conversation

I reject Claimant's suggestions that the ALJ implied that "the ALJ was not the master of this claim" and that the ALJ faulted Claimant for having the MRI and surgical consultation so close to her hearing date. (Doc. 16 at 9.) The ALJ and Claimant's attorney had the following discussion at the hearing:

> ALJ: [ . . . ] It looks like he did do the MRI, but I don't know what that that's gonna indicate - you [Mr. Hamilton] did you look at it, sir? It doesn't look like it's anything severe.
> ATTY: Right. I don't think it's—
> ALJ: Yeah.
> ATTY: I don't think it's gonna lead to any surgery or anything like that.
> ALJ: Yeah, yeah, that's what I was -- well, I was just -- you just put in this morning, but I did take a look at it—
> ATTY: Right.
> ALJ: —and sometimes it kind of raises a red flag. I don't know what they'll do with that.

(AR at 114.) First, the transcript shows that the ALJ considered last minute medical evidence placed into the record on the same day as the hearing to be some sort of "red flag."[3] Claimant fails to explain why she believes the ALJ somehow faulted her by citation to any evidence or even argument. Next, contrary to the Claimant's assertion the ALJ implied someone else was the master of this claim, the record shows the ALJ did not comment on who the decisionmaker was, but that the ALJ did not know for certain

---

[3] Claimant bolds and underlines this assertion but provides no explanation for what, if any, fault the ALJ assigned to Claimant. (Doc. 16 at 9-11.) Counsel did not ask what the ALJ meant by red flag at the hearing. (AR at 114.) To consider this further would be nothing but speculation on my part about what the ALJ meant by red flag.

16

what the doctors would do with the results of the MRI. In context, the ALJ's conversation with counsel about what "they" will do with "that" is a discussion referring to what doctors will do with the results of the MRI. Thus, I find Claimant's suggestion the ALJ was somehow faulting Claimant or indicating the ALJ was not a decisionmaker meritless.

Claimant now asserts that based on her MRI "a reasonable ALJ would have anticipated surgery could be on the horizon for [Claimant]" after that discussion between the ALJ and Mr. Hamilton at the hearing.[4] (Doc. 16 at 9.) Strangely, Claimant only supports this statement with a citation to the record where her own counsel represents that the MRI is unlikely to lead to any surgery: "I don't think [the] [MRI] is gonna lead to any surgery or something like that." *Compare* (Doc. 16 at 9) *with* (AR at 114.) Simply put, a failure to make an argument or present evidence by counsel is just that—counsel's failure. If Mr. Hamilton disagreed with the ALJ's assessment of the MRI it was his job to say so. But he did not state he thought surgery was likely and instead stated that he, too, thought the MRI would not lead to any surgery. Nothing in the record before the ALJ supports Claimant's assertion that "[a]ny person that has reviewed MRI reports in neck and back cases would likely suspect such results would lead to surgery, and should have especially been on alert given how often [Claimant] needed to shift positions at the hearing." (Doc. 16 at 9.) Indeed, Claimant cites to nothing supporting that assertion because no testimony or evidence available at the hearing indicated a surgery was necessary and Claimant's counsel also represented that a surgery was unlikely. Claimant's only supporting evidence is that she "needed to shift positions at [the] hearing." (*Id.*) That a person shifts his or her physical position does not indicate that a surgery is near or required. Claimant reasons that because doctors later determined she required surgery and carried out that surgery the ALJ's findings concerning the objective

---

[4] I also note that this assertion is at odds with Claimant's later argument that "the ALJ is not free to play doctor." (Doc. 16 at 12.)

17

medical evidence contain significant erroneous assumptions requiring remand. (Doc. 16 at 10 (citing *Ford v. Astrue*, 518 F.3d 979, 982-83 (8th Cir. 2008)).) Claimant is mistaken. *Ford* involved the Eighth Circuit's determination that the ALJ drew erroneous inferences from the record. *Ford*, 518 F.3d at 983. Here, there is no indication the ALJ made an erroneous inference because Claimant's counsel explicitly informed the ALJ that surgery was unlikely. Suffice it to say the ALJ made no erroneous inference. To argue the point any further when it is so contrary to the evidence and Mr. Hamilton's representation to the ALJ at the hearing is inappropriate and thus, I also reject this argument.

### b. *Claimant's Limitations*

Claimant argues that the ALJ failed to properly consider her spine-related sitting, standing, and walking limitations. (Doc. 16 at 11.) But as already addressed regarding the ALJ's assessment of Dr. Crippin's medical opinion, the ALJ did properly consider and provide good reasons for finding his medical opinion unpersuasive because Claimant's subjective complaints were not credible.

First, Claimant is mistaken that the ALJ did not provide good reasons for finding Claimant was not credibly reporting her limitations. (Doc. 16 at 11.) The ALJ found that Claimant's testimony was not consistent with the medical records, finding that although Claimant's "medically determinable impairments could reasonably be expected to cause some but not all alleged symptoms and severity. . . . [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR at 16.) Accordingly, the ALJ explicitly discounted Claimant's allegations based on her testimony and went on to explain how both the medical evidence, medical opinions, and Claimant's testimony did not support her allegations. (AR at 16-18.) In doing so the ALJ addressed the relevant *Polaski* factors and considered: (1) the Claimant's daily

activities (AR at 14, 16-18); (2) the duration, frequency, and intensity of the condition (*id.* at 16-18); (3) the use of medication (*id.*); (4) precipitating and aggravating factors (*id.*); and (5) functional restrictions (*id.* at 16-19). *See Wildman*, 596 F.3d at 968.

Furthermore, the ALJ found that the medical record "does not corroborate the degree of debility alleged" and explained that the medical evidence showed "limited abnormal findings combined with conservative treatment." (AR at 16.) The ALJ found that physical examination showed "moderate difficulty with tandem gait, but no difficulty with heel to toe gait and negative Romberg testing" and that treatment records also showed her "energy level as high, permitting her to accomplish daily activities." (*Id.* 16-17.) She also found that Claimant "engaged in a broad range of activities inconsistent with her allegations of disabling physical and mental impairments." (*Id.* at 18.) Those activities included, among other things, caring for pets, vacationing for six weeks, personal grooming, doing laundry, straightening her home, shopping, sewing, and the ability to drive and ride as a passenger in a vehicle. (AR at 18.) These reasons support discrediting Claimant's subjective complaints and I find that the ALJ appropriately discounted Claimant's allegations because she found inconsistencies in the evidence as a whole. *See Buckner*, 646 F.3d at 968; *see also Wildman*, 596 F.3d at 968-69. As such, I find the ALJ did not err in discounting Claimant's testimony or her allegations because substantial evidence as a whole supported the ALJ's determination. Thus, I recommend the District Court affirm this part of the ALJ's decision.

C.      ***Whether the ALJ's Fully and Fairly Developed the Record***

Claimant argues that the record was not fully and fairly developed because an agency medical consultant did not review Claimant's lumbar spine MRI. (Doc. 16 at 16.) Claimant also asserts that the ALJ should have further developed the record and that a medical professional should review it. (*Id.*) The Commissioner argues that the

ALJ fully and fairly developed the record, and that Claimant is mistaken that a medical professional should review it. (Doc. 14 at 23.)

### 1. Relevant Law

A "social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). The ALJ bears this responsibility "independent of the claimant's burden to press [her] case" and it extends to cases where claimants are represented by counsel at the administrative hearing. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, the Eighth Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. *Snead,* 360 F.3d at 836; 20 C.F.R. § 404.1512. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala,* 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)). In addition, the ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (alteration in original) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

### 2. Analysis

Claimant fails to explain or otherwise show how the ALJ failed to develop the record or that Claimant was prejudiced. Thus, remand is not required. *See Shalala*, 999

F.2d at 1234.  Instead, Claimant asserts that the MRI should have been reviewed.  (Doc. 16 at 15.)  Here, as noted above, the ALJ reviewed the relevant medical evidence including magnetic imaging, the record from the Center for Neurosciences Orthopedic & Spine, the record from Unity Point Family Medicine, records from Unity Point Berryhill Center.  (AR at 16-18.)  She also considered the medical opinions before her.  (AR at 17, 19.)  Her review also included the testimony from the hearing where counsel represented that no surgery was likely.  (*Id*. at 16.)  Claimant points to her difficulties walking and left-leg weakness as evidence the MRI should have been more closely reviewed.  (Doc. 16 at 14.)  But medical evidence supporting the ALJ's decision showed "moderate difficulty with tandem gait, but no difficulty with heel to toe gait and negative Romberg testing" and that treatment records also showed her "energy level as high, permitting her to accomplish daily activities."[5]  (AR at 16-17.)  Based on that review of the record, the ALJ concluded that the severity of Claimant's allegations was inconsistent with the medical evidence.  (*Id*. at 16-18.)

In sum, I find that the ALJ appropriately considered the medical evidence.  Thus, I find Claimant's argument that the ALJ did not fully address the medical evidence meritless, and I recommend the District Court affirm this part of the ALJ's decision.

### D.      Whether the ALJ Properly Evaluated Other Evidence

Claimant argues the ALJ erred by not adequately addressing the nonmedical sources.  (Doc. 16 at 17-18 (citing *Nowling v. Colvin*, 813 F.3d 1110, 1121 (8th Cir. 2016)).)  Specifically, that the ALJ failed to account for Claimant's prior work supervisor's assessment and Donna Baxter's third-party function report.  (*Id*.)  The

---

[5] Because Claimant focuses on what happened after the hearing with her MRI and eventual surgery, I also note that after her surgery, even though she appeared at the doctor with a walker, her treatment notes state "She is able to walk without her walker.  She does have a notable limp on the left hand side.  Strength and sensation are equal and intact in the left lower leg."  (AR at 30.)

Commissioner argues that the ALJ is not required to address every piece of evidence. (Doc. 17 at 17.)

### 1. Relevant Law

An ALJ is "not required to articulate how [she] considered evidence from nonmedical sources" with the requirements used to consider evidence from medical sources. 20 C.F.R. § 416.20c(d). Additionally, an ALJ's decision to not expressly address nonmedical evidence or describe its weight does not lead to the reversal of an ALJ's otherwise supported decision. *Nowling*, 813 F.3d at 1121 (collecting cases). If there exist "errors and uncertainties in the opinion," however, remand for reconsideration and clarification may be appropriate. *Id.* (quoting *Wilcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2010)). Still, "an arguable deficiency in opinion-writing technique" is not enough to result in remand when it "ha[s] no effect on the outcome of the case." *Wilcockson*, 540 F.3d at 880.

### 2. Analysis

Here, I find that Claimant has failed to show what errors or uncertainties in the opinion make remand appropriate. First, Claimant points to the work assessment of her prior supervisor, Stacy Brown, to suggest the ALJ should have found her limited to the sedentary exertional level. (Doc. 16 at 17.) Claimant's reliance on Ms. Brown's work assessment is misplaced. That assessment indicates that Claimant's work performance was at least adequate in all areas. (AR at 315.) Ms. Brown also rated Claimant's work quality and ability to adhere to schedules as good. (*Id.*) Moreover, although Ms. Brown noted Claimant was tired, sore, and physically limited toward the end of her employment periods, Ms. Brown also noted she would rehire Claimant if Claimant were able to complete tasks. (*Id.* at 316.) Thus, Ms. Brown's assessment in no way indicates Claimant is limited to the sedentary exertional level as Claimant alleges.

22

Second, Claimant asserts that the ALJ dismissed Ms. Baxter's report without explanation. (Doc. 16 at 17.) The ALJ, however, extensively referred to Ms. Baxter's report in Step Three of her decision. (AR at 13-14.) Claimant also fails to explain what in Ms. Baxter's report should have been expressly addressed. In reviewing Ms. Baxter's report and the hearing decision, I can only conclude that Ms. Baxter's report is merely evidence that supports the ALJ's decision. (*See* AR at 13-14, 19.)

Thus, I find no error or uncertainty in the ALJ's opinion that indicates this evidence should be expressly considered more or less than it was. *See Nowling*, 813 F.3d at 1121. Regardless, neither nonmedical source contains evidence contradicting the ALJ's decision that would cause me to determine the overall evidence in support is not substantial. *See Baldwin*, 349 F.3d at 555. As such, I recommend the District Court affirm this part of the ALJ's decision.

### E. Whether the ALJ Properly Considered Dr. Larson's Opinion

Claimant characterizes Dr. Larson's opinion as finding that she has a limitation precluding her from working in a highly populated job stetting. (Doc. 16 at 20.) But contrary to Claimant's contention, Dr. Larson did not opine that Claimant had a limitation precluding her employment in a highly populated job setting. (*Id.* at 20.) What Dr. Larson did opine was that "[t]here *may be* limitations to [Claimant] working. . . . For example, [Claimant] has a history of panic attacks, and *these symptoms could be exacerbated* if [Claimant] is in a high-stress working environment or a job setting that is highly populated." (AR at 1020 (emphasis added).) In short, Dr. Larson noticed the potential problems that Claimant's anxiety could pose in such a setting—not that she had a limitation precluding employment in such a setting. The ALJ summarized Dr. Larson's opinion as it was, noting that Dr. Larson "opined the [C]laimant *might have* work limitations, including her anxiety and panic symptoms being exacerbated in high-population, high-stress work environments." (AR at 17 (emphasis added).) Indeed, Dr.

Larson spoke in no more than vague possibilities such as "[t]here may be limitations . . . may make it difficult . . . could be exacerbated . . . may have some problems." (AR at 1020.)

The ALJ accurately summarized Dr. Larson's opinion accepting it as "mostly persuasive." (AR at 17, 19.) Claimant asserts that "the ALJ does not offer any explanation for how persuasive the ALJ found Dr. Larson's limitation opinion precluding a job setting that is highly populated, which was a legal error that requires remand." (Doc. 16 at 20.) This argument does no more than misstate Dr. Larson's limitation opinion. Dr. Larson's opinion did not preclude employment in a job setting that is highly populated. Thus, Claimant's assertion that the ALJ did not articulate sufficient reasons for finding Dr. Larson's opinion unpersuasive is illogical. The ALJ accepted Dr. Larson's opinion as it was. Accordingly, I find Claimant's argument here meritless and recommend that the District Court affirm this part of the ALJ's decision.

## F.    *Whether the ALJ Properly Evaluated Ms. Mangold's Opinion*

Claimant argues that the ALJ's failure to address and describe how persuasive the ALJ found Ms. Mangold's letter requires remand because her letter was a medical opinion. (Doc. 16 at 21.) Claimant also asserts the ALJ failed to further develop the record by not addressing Ms. Mangold's opinion. (*Id.* at 22.) The Commissioner argues that Claimant mischaracterizes Ms. Mangold's letter as a medical opinion because nothing in her letter qualifies as a medical opinion. (Doc. 17 at 21.) The Commissioner also argues that the ALJ did develop a reasonably complete record and that it was Claimant who failed to carry her burden and prove her disability. (*Id.* at 22.)

### 1.    *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Sections 404.1520c apply to analysis of this opinion. The rules define both medical source and medical opinion. A "[m]edical source means an individual who is

24

licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal Law[.]" 20 C.F.R. § 404.1502(d). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) . . . of this section." 20 C.F.R. § 416.913(a)(2). Specifically,

> (i) Medical opinions in adult claims are about impairment-related limitations and restrictions in:
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.*

### 2. Analysis

The ALJ did not address Ms. Mangold's letter in her decision. Ms. Mangold is a Licensed Independent Social Worker ("LISW"). (AR at 1091.) Although she is not an "acceptable medical source," 20 C.F.R. § 404.1502(a)(1-8), she qualifies as a medical source under 20 C.F.R. § 404.1502(d). *See Galloway v. Kijakazi*, No. 20-CV-00059-CJW, 2021 WL 5278545, at *8 (N.D. Iowa Sept. 2, 2021), *report and recommendation adopted*, No. 20-CV-59-CJW-MAR, 2021 WL 4399719 (N.D. Iowa Sept. 27, 2021) (explaining that LISWs are considered medical sources but not accepted medical sources).

Because LISWs qualify as medical sources, I address whether Ms. Mangold provided a medical opinion.

In relevant part, Ms. Mangold's letter stated the following:

I have seen [Claimant] for therapy for some time. I also saw her for a number of years when I worked at another agency. She has been diagnosed with Bipolar disorder most recent episode depression. She also has a diagnosis for schizophrenia with a history of hearing voices. She has had these diagnosis [sic] for a number of years. She struggles with poor concentration, forgetful, issues with word recall at times, and poor coping with stress. Has had multiple episodes of depression. It can be difficult for her to leave her home during these times.

Treatment focus has utilized DBT and CBT skills to help her with emotional regulation, stabilization, coping with life stressors and good decision making. Also working on getting her in to see a new provider in the area for her medication management. There have been a large turnover of prescribers in this area and she had her family doctor prescribe her current medication of Geodan and Sertrline.

(AR at 1091.) Thus, this letter addresses none of the medical opinion criteria in 20 C.F.R. § 416.913(a)(2) and does not qualify as a medical opinion. Indeed, Claimant fails to argue what criteria the letter does satisfy and merely summarizes its contents. (Doc. 16 at 21.) Although the letter does state Claimant "struggles with poor concentration, forgetful, issues with word recall at times, and poor coping with stress" and that "it can be difficult for her to leave her home during [episodes of depression]" it does not opine on: (1) how, if at all, Claimant has an impairment related limitation or restriction in her ability to perform physical demands of work activities; (2) her ability to perform mental demands of work activities; (3) her ability to perform other demands of work; and (4) her ability to adapt to environmental conditions. (AR at 1091); *see* 20 C.F.R. § 416.913(a)(2)(i)(A)-(D). Ms. Mangold also did not opine "about what [Claimant] can still do despite [her] impairment." *See* 20 C.F.R. § 416.913(a)(2). Even though it may be possible to make inferences beyond what Ms. Mangold wrote, such

speculation would not qualify as Ms. Mangold's medical opinion. Accordingly, Ms. Mangold's letter qualifies not as a medical opinion but as an "other medical source" because it is neither objective medical evidence nor a medical opinion. 20 C.F.R. § 416.913(a)(3). As such, the ALJ did not err by not addressing the persuasiveness of Ms. Mangold's letter.

I also find Claimant's assertion that the ALJ failed to develop the record by failing to request Ms. Mangold's treatment notes meritless. Although "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. . . . [T]he burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead*, 360 F.3d at 838) (citing *Stormo*, 377 F.3d at 806). Here, Claimant's counsel affirmed the record was complete and ready for a decision. (AR at 83.) Still, the ALJ may need to further develop the record "if the medial records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010). But as already discussed, Claimant has failed to show prejudice or that the ALJ failed to develop the record and the ALJ was able to determine whether Claimant was disabled. *See supra* Section III.C.2. I find that the ALJ did not err in failing to address or develop evidence related to Ms. Mangold's letter and recommend the District Court affirm this part of the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as

well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 6th day of July, 2022.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa