# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

JANELLE ZOCH,

    Plaintiff,

vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

No. 20-CV-4058 CJW-MAR

**ORDER ON REPORT AND RECOMMENDATION**

_____

## I.    INTRODUCTION

This matter is before the Court on a July 6, 2022 Report & Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge. (Doc. 22). Judge Roberts recommends the Court affirm the decision of the Commissioner of Social Security ("the Commissioner") denying plaintiff Janelle Zoch's ("claimant") application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (*Id.*, at 1). On July 20, 2022, claimant filed a timely objection. (Doc. 23). On July 21, 2022, the Commissioner filed a response. (Doc. 24). For the following reasons, the Court **sustains in part and overrules in part** claimant's objections (Doc. 23), **accepts in part and rejects in part** Judge Roberts' R&R (Doc. 22), and **remands this case** to the Commissioner for further proceedings consistent with this order.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003) (quotation omitted). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quotation omitted).

To determine whether the Commissioner's decision meets this standard, the court "consider[s] all of the evidence that was before the [administrative law judge ("ALJ")], but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both "evidence [which] supports the Commissioner's decision [and] evidence that detracts from it." *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (quotation omitted). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555, or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quotation omitted). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of

benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quotation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of an R&R*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*

3

*City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III.   PROCEDURAL HISTORY AND THE R&R

On April 30, 2018, claimant applied for Social Security benefits, alleging she became disabled August 1, 2018, due to fibromyalgia, degenerative disc disease of the lumbosacral spine, polyneuropathy, status post bilateral carpal tunnel syndrome release, and bipolar disorder.  (AR 10, 12).[1]  The Commissioner denied her application on initial review and again on reconsideration.  (AR 147, 156).  On February 20, 2020, an ALJ held a hearing on claimant's application.  (AR 10).

On March 26, 2020, the ALJ issued a written opinion finding claimant was not disabled.  (AR 7-26).  The ALJ found that claimant suffered from the following severe impairments: fibromyalgia, degenerative disc disease of the lumbosacral spine, polyneuropathy, status post bilateral carpal tunnel syndrome release, and bipolar disorder.  (AR 12).  The ALJ found that claimant's impairments could cause her symptoms, but that her claims concerning the intensity, persistence and limiting effects of these symptoms were inconsistent with the medical evidence.  (AR 16).  For purposes of determining claimant's ability to perform her past work (at step four) and other work

---

[1] "AR" refers to the administrative record by page number.

(at step five), the ALJ determined claimant's Residual Functional Capacity ("RFC")[2] was such that she could:

> perform light work as defined in 20 CFR 416.967(b) with postural, manipulative and mental restrictions and limitations. The claimant should not climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. She can perform handling, fingering, and feeling with her bilateral upper extremities frequently, but not constantly. She must avoid vibration and hazards.

(AR 15). Based on claimant's RFC, age, education, and work experience, the ALJ found claimant could perform past work as a cashier as well as other jobs that existed in significant numbers in the national economy. (AR 19-20). Thus, the ALJ found claimant was not disabled. (AR 21).

On October 19, 2020, the Appeals Council denied claimant's appeal of the ALJ's decision. (AR 1-6).

On December 18, 2020, claimant filed her complaint with this Court. (Doc. 3). By November 3, 2021, the parties had fully briefed the issues, the Court deemed the case ready for decision, and the Court referred it to Judge Roberts for an R&R. (Doc. 16-19).

In her brief, claimant argued the ALJ erred by failing to: (A) articulate sufficient reasons for how persuasive she found Dr. David Crippin's opinion;[3] (B) articulate good reasons for discounting claimant's subjective complaints; (C) fully and fairly develop the record concerning "some medical evidence"; (D) properly evaluate the work activity questionnaire; (E) articulate sufficient reasons for how persuasive she found Dr. Tony Larson's opinion; and (F) articulate sufficient reasons for how persuasive she found Diane

---

[2] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).

[3] In her decision, the ALJ misspelled Dr. Crippin's name as "Crippen." (Doc. 16, at 6).

Mangold's letter. (Doc. 16). Judge Roberts addressed each of these claimed errors in turn and found as to each that the ALJ did not err and recommended the Court affirm the ALJ's decision. (Doc. 22, at 8-27).

## IV. DISCUSSION

In her objections to Judge Roberts' R&R, claimant takes issue with some of Judge Roberts' specific findings; in other instances claimant simply disagrees with Judge Roberts' conclusions. As will be discussed, to the extent that claimant does no more than rely on the arguments she already made to Judge Roberts and fails to identify any error of fact or analysis by Judge Roberts, the Court will review the R&R for clear error. Otherwise, the Court will conduct a de novo review. The Court will address the issues in the order claimant raised them before Judge Roberts.

### A. *Dr. Crippin's Opinions*

Claimant argues that "[t]he ALJ did not address the important, outcome-determinative, standing or walking limitations [identified by Dr. Crippin], as the R&R recognized." (Doc. 23, at 3). Claimant further argues that "[t]he R&R was wrong to conclude [that] Dr. Crippin's opinions were based largely on [claimant's] self-report." (*Id.*). Claimant argues that the R&R overlooked support for Dr. Crippin's opinion, including her need to use a cane or walker and the fact she had back surgery post-hearing, a February 2020 MRI, and Dr. Crippin's adoption of the opinions of a BVRMC occupational therapist. (*Id.*). Claimant also faults Judge Roberts for finding Dr. Crippin's opinions vague and conclusory. (*Id.*, at 4-5). Claimant argues that Judge Roberts was wrong in finding Dr. Crippin's opinions inconsistent with the medical record. (*Id.*, at 5-6). Last, claimant argues that Judge Roberts erred in finding that any failure of the ALJ to articulate grounds for discounting Dr. Crippin's opinion was harmless, asserting that Judge Roberts' finding is contrary to the case law on this issue. (*Id.*, at 6).

6

Dr. David Crippin was a treating physician who completed a physical RFC worksheet for claimant. (AR 1333-47). The ALJ "deemed somewhat persuasive Dr. Crippin's opinion that the claimant suffers from chronic pain and depression that would affect her ability to concentrate . . . [and] considered Dr. Crippin's opinion on manipulative limitations . . . [but found] no evidentiary support for Dr. Crippin's other extreme limitations, such as [claimant] rarely being able to lift 10 pounds [and] never being able to lift 10 or more pounds." (AR 19). The ALJ also found no support for Dr. Crippin's opinion that claimant would require unscheduled breaks every hour and would likely miss four or more days of work each month. (*Id.*).

As to the supportability of the opinion, Judge Roberts recognized that the ALJ did not directly address Dr. Crippin's limitation on claimant's ability to walk. (Doc. 22, at 10). Judge Roberts found, however, that the ALJ was not required to directly address every limitation in Dr. Crippin's opinion. (*Id.*, citing 20 C.F.R. § 416.920c(b)(1) and *Bonnett v. Kijakazi*, 859 Fed. App'x 19 (8th Cir. 2021)). Judge Roberts further noted that the check-the-box form used by Dr. Crippin was filled out by a BVRMC occupational therapist. (Doc. 22, at 11). Judge Roberts found it "critical" that Dr. Crippin mentioned that he agreed with the form, but made no mention of the extreme limitations noted relating to gait. (*Id.*). Judge Roberts also pointed out that Dr. Crippin's notes only stated that claimant had left leg weakness and bilateral feet neuropathy, but no foot drop or focal deficits. (*Id.*). Judge Roberts further pointed out that "Dr. Crippin did not provide any medical evidence or supporting explanation to support his opinion regarding Claimant's ability to stand or walk for only two hours during an eight-hour shift and then in only fifteen-minute increments" and that claimant pointed to nothing in the record other than Dr. Crippin's finding to support that opinion. (*Id.*, at 12). Thus, Judge Roberts found Dr. Crippin's opinion "consisted almost entirely of vague conclusory statements." (*Id.*).

7

The Court agrees with Judge Roberts. An ALJ's failure to specifically address the consistency and supportability of any medical opinion is reversible error. *Bonnett*, 859 Fed. App'x at 20 (reversing an ALJ's decision that adequately evaluated supportability of opinion but failed to address consistency with other evidence of record). That does not mean, however, that an ALJ is required specifically to address each statement made or limitations referenced in an opinion. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). (stating that an ALJ is not required to "mechanically list and reject every possible limitation"). The Court further agrees with Judge Roberts that Dr. Crippin's opinion about claimant's ability to stand and walk, expressed in a checkbox form, was not supported by his notes or any explanation or elaboration. As such, is it vague and conclusory. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (finding an ALJ did not err in giving little weight to an assessment that consisted of "nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the blank responses.").

As for consistency, Judge Roberts also found Dr. Crippin's opinion was inconsistent with other sources. (Doc. 22, at 12-13). Judge Roberts pointed out that Dr. Crippin's opinion was inconsistent with claimant's own self-evaluation. (*Id.*, at 12). Judge Roberts noted that the ALJ properly considered whether Dr. Crippin's opinion was consistent with other medical evidence, and that it is not the Court's role to reweigh the evidence. (*Id.*, at 12-13).

Again, the Court agrees. The ALJ specifically found that Dr. Crippin's more "extreme" opinions were inconsistent with other evidence. (AR 19). Although claimant points to evidence to support her position, such as the February 2020 MRI and vague language in claimant's self-report about not being able to "stand for long periods of time" and how she was "lucky to lift 15-20 lbs if even that much," it is not for this Court to reweigh the evidence. The ALJ considered the February 2020 MRI (AR 17) and

8

claimant's self-evaluation (AR 19), along with the medical records as a whole. An ALJ may properly reject the opinion of any medical expert if it is inconsistent with the medical record as a whole, or where a physician renders inconsistent opinions that undermine the credibility of such opinions. *Goff*, 421 F.3d at 790; *Pearsall v. Massanari*, 274 F.3d 1211, 1218-19 (8th Cir. 2001). On review, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Even if a reviewing court would weigh the evidence differently, the reviewing court must nonetheless affirm the denial of benefits if there is substantial evidence to support the ALJ's finding. *Pearsall*, 274 F.3d at 1217.

Judge Roberts alternatively found that even if the ALJ failed to address supportability or consistency, he "would still find the error harmless" because claimant cited to nothing in the record to support her assertion that "but for the error she would have been 'limited to a sedentary exertional level, given her mental limitations, [and] would have been found disabled.'" (Doc. 22, at 13). Claimant argues that the case law does not require claimant to point to something in the record to support her claim. (Doc. 23, at 6).

Again, the Court agrees with Judge Roberts. The burden to overcome a presumption of harmless error lies with claimant as the party attacking the Commissioner's decision. *Morrison v. Berryhill*, No. 6:17-CV-02007-LRR, 2017 WL 5589047, at *4 (N.D. Iowa Oct. 17, 2017); *see also Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (stating that to show than any error was not harmless, a claimant must provide some indication that the ALJ would have decided differently absent the error). Thus, claimant must identify evidence that finding the disputed impairments severe would have resulted in finding additional limitations in her RFC. *Hall v. Colvin*, No. C15-15-CJW, 2016 WL 1267759, at *6 (N.D. Iowa Mar. 30, 2016). Here, claimant has failed to do so. She simply asserts that if the ALJ would have given more weight to Dr.

9

Crippin's opinion, the ALJ would have found claimant limited to sedentary work. But claimant does not cite to any evidence showing the ALJ would have altered the RFC in this way even if she gave more weight to Dr. Crippin's opinion about claimant's ability to walk and stand.

Thus, the Court overrules claimant's objection to the R&R on this ground.

### B. *The ALJ's Credibility Determination*

Claimant objects to Judge Roberts' R&R in relation to the ALJ's credibility determination by focusing on the ALJ's alleged erroneous findings about claimant's need for surgery. (Doc. 23, at 7). Claimant argues that Judge Roberts misinterpreted the ALJ's comments at the hearing as referencing surgery, asserting that the ALJ was actually referencing a hearings officer or staff action. (*Id.*). Claimant argues that the ALJ's comments show an erroneous interpretation of the February 2020 MRI, whether it supported a finding of a severe claim, and whether it indicated that surgery would be necessary. (*Id.*, at 7-8). Claimant argues that Judge Roberts erred in "placing greater weight on Mr. Hamilton's comment . . . to reject any importance of [claimant's] pre-hearing decision surgery" and suggests Judge Roberts did so "to reject application of *Ford v. Astrue*." (*Id.*, at 9). Claimant also faults Judge Roberts for failing to "address the *Cunningham v. Apfel* issue," that is the need to consider post-hearing evidence in determining whether the record as a whole supports the ALJ's determination. (*Id.*).

Before Judge Roberts, claimant argued that the ALJ did not provide good reasons for finding her claimed limitations uncredible and "the ALJ's finding[s] that [claimant] pursued only conservative treatment . . . minimally supported." (Doc. 22, at 14). Claimant also argued to Judge Roberts that the ALJ's findings concerning the medical evidence and claimant's need for surgery were erroneous. (*Id.*). Last, claimant argued that it was error for the ALJ to find her limited activities showed her ability to perform fulltime competitive light exertional work. (*Id.*). Here, in her objections to the R&R,

10

claimant is objecting on only the second of these grounds. Consequently, the Court reviewed the other two grounds for clear error by Judge Roberts and found none. Thus, the Court adopts the R&R on those grounds and will turn to the one issue about which claimant objects to the R&R.

Judge Roberts addressed the so-called MRI conversation and what it meant as to claimant's anticipated need for surgery. (Doc. 22, at 16). Judge Roberts quoted part of the hearing transcript involving a discussion between the ALJ and claimant's attorney, Mr. Hamilton:

> ALJ: [ . . . ] It looks like he [Dr. Crippin] did do the MRI, but I don't know what that that's gonna indicate—you [Mr. Hamilton] did you look at it, sir? It doesn't look like it's anything severe.
> ATTY: Right. I don't think it's—
> ALJ: Yeah.
> ATTY: I don't think it's gonna lead to any surgery or anything like that.
> ALJ: Yeah, yeah, that's what I was—well, I was just—you just put in this morning, but I did take a look at it—
> ATTY: Right.
> ALJ: —and sometimes it kind of raises a red flag. I don't know what they'll do with that.

(*Id.*, quoting AR at 114). Judge Roberts interpreted this conversation as showing that the ALJ considered the late evidence and interpreted the "I don't know what they'll do with that" comment as referring to what doctors will do with the results of the MRI. (*Id.*, at 16-17). Claimant argues that the ALJ was not referencing doctors when stating "I don't know what they'll do with that," but rather, was discussing hearing officers or staff action. (Doc. 23, at 7, citing the 5-day rule generally barring evidence not submitted at least 5 business days before a hearing). Claimant argues that this ties into the ALJ's reference to a red flag. (*Id.*).

11

Judge Roberts correctly noted that the attorney did not ask what the ALJ meant by the red flag reference and concluded that it would be speculation to interpret what the ALJ meant. (Doc. 22, at 16 n.3). In her objection, claimant provides more context for the conversation that persuades the Court that the ALJ might well have been referencing the hearing office staff. Nevertheless, it does nothing in the Court's view to distract from Judge Roberts' ultimate conclusion that the ALJ was aware of the MRI and considered it. Indeed, the ALJ admitted the late evidence (AR 10), as claimant acknowledges. (Doc. 23, at 8 n.2).

Claimant recognizes that the more important question is whether the ALJ erred in her appreciation of what the MRI indicated about the likelihood of future surgery. (*Id.*, at 8). Using hindsight, claimant argues that it is clear that the MRI would lead to "eventual surgery at the L4-5 level." (*Id.*). That conclusion is not at all supported by the record before the ALJ. Dr. Crippin's notes reflected that claimant should "see someone re possible surgery or steroid injections." (AR 1344). In other words, even Dr. Crippin did not jump to the surgery conclusion that claimant insists was obvious, but rather thought the condition might also be treatable through steroid injections. Moreover, there was nothing more presented to the ALJ at or after the hearing and before her decision that shed any more light on the import of the MRI. And claimant's own counsel interpreted the MRI as not suggesting that surgery was called for.[4]

The Court agrees with Judge Roberts' conclusion that claimant's reliance on *Ford v. Astrue*, 518 F.3d 979 (8th Cir. 2008), is misplaced because there the Court reversed an ALJ for drawing erroneous inferences from the record. *Id.*, at 983. The Court

---

[4] Claimant engages in wild speculation when suggesting that Mr. Hamilton thought the ALJ was referencing a left-leg MRI performed in January 2020. (Doc. 23, at 9 n.3). The entire context of the exchange between the ALJ and Mr. Hamilton had to do with the late-submitted February 2020 MRI. Thus, the Court rejects claimant's interpretation and finds that Mr. Hamilton opined that the February 2020 MRI would not likely "lead to surgery or anything like that."

12

disagrees with claimant that Judge Roberts relied on claimant's attorney's misinterpretation of the MRI to avoid the holding in *Ford*. Judge Roberts made it clear (Doc. 22, at 18), and the Court agrees, that this case did not involve an erroneous inference drawn from the record.

Last, claimant argues that because claimant did, in fact, have back surgery, that the Court must evaluate this post-hearing evidence in determining whether the ALJ erred. (Doc. 23, at 8). Judge Roberts did not directly address this issue.[5] Here, the ALJ was unaware that claimant had surgery before issuing her decision, but the Appeals Council was aware of it when it denied further review. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). In *Cunningham v. Apfel*, 222 F.3d 496 (8th Cir. 2000), the Eighth Circuit Court of Appeals explained how a court reviews the impact of new evidence:

> The newly submitted evidence thus becomes part of the "administrative record," even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances, we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366.

---

[5] It is understandable why he did not. Claimant made only passing reference to *Cunningham* and her subsequent surgery in her brief and did not in her briefing before Judge Roberts make the argument she makes now. (Doc. 16, at 10). The Commissioner did not address the issue at all (Doc. 17), and claimant did not mention it again in her reply brief (Doc. 18).

13

222 F.3d at 500. A remand is proper only if the new evidence is relevant and probative of the claimant's condition for the time period for which the benefits were denied. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). *See also Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991) (holding that new evidence is relevant only if it relates to claimant's condition on or before the ALJ's decision).

Claimant asserts she was disabled during the period between the alleged onset (August 1, 2018) and the date of the ALJ's decision (March 26, 2020). New evidence must pertain to the time period for which benefits are sought and not to later-acquired disabilities or subsequent deterioration of a previously non-disabling condition. *See Goad v. Shalala*, 7 F.3d 1397, 1398 (8th Cir. 1993) (per curiam). The MRI that led Dr. Crippen to discuss a consultation for possible surgery or steroid injections occurred in February 2020. Claimant's surgery occurred March 18, 2020. (AR 29). So the question is whether the evidence that claimant had back surgery March 2020, during the time period under consideration, is probative of whether claimant was disabled during that time period.

Here, the Court finds it is probative. The surgery involved claimant's L4-5 discs, an area of her back that led to her complaints of pain and limitations. The ALJ discounted claimant's subjective claims of pain and limitations based on other evidence, and did not view the February 2020 MRI as suggesting a severe issue. It is not for ALJs to play doctor, and so it was not the ALJ's fault for not being able to recognize that the MRI called for surgery. *Adamczyk v. Saul*, 817 Fed. App'x 287, 289 (8th Cir. 2020). That a surgeon a month later determined the MRI reflected sufficiently severe conditions to require surgical repair could very well inform the ALJ's analysis about the weight she gave to claimant's subjective complaints. In short, the Court finds that the fact claimant required back surgery is probative about the credibility of her subjective complaints of back pain and her subjective statements of limitations her back problems presented.

14

The Court therefore sustains claimant's objection to this portion of the R&R and finds that remand to the Commissioner for consideration of claimant's surgery in assessing claimant's credibility about her limitations is appropriate. To be clear, the Court finds the ALJ did not err on any other aspect of assessing claimant's credibility. The only issue on remand is whether, knowing claimant subsequently had back surgery based on the February 2020 MRI results, it changes the ALJ's assessment of claimant's credibility.

Thus, the Court sustains in part and overrules in part claimant's objection to the R&R on this ground. Although the Court finds remand proper on this narrow issue, it will continue to consider the other claims of error claimant raised.

### C. *Development of the Record*

Claimant asserts that Judge Roberts erred "by ignoring the fact that [claimant] had to have back surgery to try and address [her] large herniation compressing her spinal cord and exiting nerve roots." (Doc. 23, at 10). Claimant asserts the ALJ erred by "dimiss[ing] . . . the importance of the February 2020 MRI, and the ALJ's idea that [claimant] did not require surgery" which claimant asserts "could have been avoided had the ALJ requested a medical review of this evidence." (*Id.*). Judge Roberts found further development of the record was unnecessary and that the medical evidence available to the ALJ at the time supported the ALJ's decision. (Doc. 22, at 20-21).

Because the Court finds remand appropriate here to consider the fact that claimant had surgery due to the February 2020 MRI, the Court finds it unnecessary to address this issue further. Whether ordered by the ALJ or not, the record has been further developed by evidence that claimant had back surgery and the ALJ will now have that evidence available on remand.

Thus, the Court overrules claimant's objection on this ground.

15

### D. *Evaluation of Other Evidence*

Claimant argued that the ALJ erred by not adequately addressing the nonmedical sources, specifically claimant's prior supervisor, Stacy Brown, and Donna Baxter's third-party function report. (Doc. 16, at 17-18). Judge Roberts found the ALJ did not err, finding that Ms. Brown's report did not show claimant was limited to sedentary work and finding that the ALJ fully considered Baxter's report and there was nothing in it that detracted from the ALJ's decision. (Doc. 22, at 22-23). Claimant asserts that Judge Roberts' R&R "was not complete in its description of the Stacy Brown Work Performance Evaluation" and points out that claimant "had shorter hours and fewer or easier/lighter duties as needed." (Doc. 23, at 10). Claimant acknowledges that Brown stated she would rehire claimant, but claimant presumes that rehiring would be conditional on shorter hours and easier/lighter duties as needed, which claimant argues is inconsistent with the ALJ's RFC determination that did not include breaks or lighter duties as needed. (*Id.*, at 10-11).

The Court finds no error here. Brown's reference to shorter hours and easier/lighter duties, as needed, was at best vague and did not support limitations greater than those the ALJ found appropriate. The ALJ's RFC already provided that claimant could only "perform light work" and that claimant could only perform simple, routine tasks. (AR 15). It further noted that claimant could "perform handling, fingering, and feeling with her bilateral upper extremities frequently, but not constantly." (*Id.*). Nothing in Brown's evaluation suggested the need for frequent breaks or supports Dr. Crippin's extreme limitations.

Thus, the Court overrules claimant's objection on this ground.

### E. *Dr. Larson's Opinion*

Claimant argues that "[t]he ALJ should have, per the new regulation articulation standards explained more fully how the ALJ was addressing Dr. Larsen's [sic] opinions

16

in the RFC explanation section in the paragraph where the ALJ was addressing Dr. Larsen's [sic] opinions." (Doc. 23, at 11). In her objection to the R&R, claimant fails to articulate how she believes Judge Roberts erred and states that she relies "on principal briefing on this issue." (*Id.*).

The Court finds that claimant has not specifically identified the alleged error in Judge Roberts' R&R and thus the Court reviews this issue for clear error. The Court finds none. Judge Roberts properly noted that Dr. Tony Larson provided vague possibilities of limitations that claimant's anxiety might present in an employment setting, reviewed the ALJ's evaluation of those vague reflections, and appropriately found the ALJ did not err in explaining how the ALJ treated Dr. Larson's opinion. (Doc. 22, at 23-24).

Thus, the Court overrules claimant's objection on this ground.

### F. Ms. Mangold's Opinion

Claimant argued that Ms. Diane Mangold's letter was a medical opinion that required the ALJ to address and describe how persuasive it was and that the ALJ should have further developed the record regarding that opinion. (Doc. 16, at 21). Judge Roberts noted that Ms. Mangold was a Licensed Independent Social Worker and qualified under the regulations as a medical source, but found her letter was not a medical opinion. (Doc. 22, at 25-27). Thus, Judge Roberts found the ALJ did not err in failing to address Ms. Mangold's letter. (*Id.*, at 27). Judge Roberts also found the ALJ did not err in failing to develop the record by requesting Ms. Mangold's treatment notes because it is the claimant's burden to prove disability, and her counsel affirmed that the record was complete and ready for decision. (*Id.*). In her objection, claimant asserts that Judge Roberts erred in finding the letter was not a medical opinion, even if it was vague, and the ALJ should have further developed the vagueness by obtaining her notes. (Doc. 23, at 11-12).

17

The Court finds that Judge Roberts properly determined that Ms. Mangold's letter did not qualify as a medical opinion. Judge Roberts was right that the letter may describe some of claimant's symptoms, but it does not provide an opinion about claimant's impairments related to her ability to work, or what she can or cannot do despite her limitations. (Doc. 22, at 26). Judge Roberts noted that though one may be able to draw inferences on these topics from Ms. Mangold's description of claimant's symptoms, Ms. Mangold did not attempt to draw those inferences herself to render opinions on how those symptoms would affect claimant's ability to work. (*Id.*, at 26-27).

Thus, the Court overrules claimant's objection on this ground.

## V. REVERSAL OR REMAND

The scope of review of the Commissioner's final decision is set forth in Title 42, United States Code, Section 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Bowen*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). Here, the Court concludes that the medical records as a whole do not "overwhelmingly support[ ] a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the Court finds the ALJ must consider the new evidence that claimant had

18

back surgery in determining whether claimant's subjective complaints of pain and limitations are credible. Thus, the Court does not reverse the ALJ's decision, but finds remand to the ALJ appropriate.

## VI. CONCLUSION

For these reasons:

1. Claimant's objections (Doc. 23) to the Report and Recommendation (Doc. 22) are **sustained in part and overruled in part**.

2. The Court **accepts in part and rejects in part** the Report and Recommendation. (Doc. 22). *See* 28 U.S.C. § 636(b)(1).

3. This case is remanded to the Commissioner for further proceedings on the narrow issue of whether new evidence that claimant required back surgery after her hearing but before the ALJ's decision would alter the ALJ's assessment of claimant's credibility about her pain and limitations.

**IT IS SO ORDERED** this 18th day of August, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa